## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CLIFFORD PEPPER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **(1) PENSION TRUST FUND FOR OPERATING ENGINEERS LOCAL NO.3, and** | ) ) ) | **Case No. CIV-09-041-JHP** |
| | ) | |
| **(2) BOARD OF TRUSTEES OF THE PENSION  TRUST FUND FOR OPERATING ENGINEERS LOCAL NO.3,** | ) ) ) ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the court in this ERISA[1]  case are Plaintiff Clifford Pepper's Opening and Response Briefs (Docket Nos. 40, 42), and Defendants Pension Trust Fund for Operating Engineers Local No.3 (Plan) and Board of Trustees of the Pension Trust Fund for Operating Engineers Local No. 3's (Board) Opening[2]  and Answer Briefs (Docket Nos. 39, 41).  For the reasons cited herein, the Board's denial of Plaintiff's Application for Disability Pension Benefit is AFFIRMED.

---

[1]The parties have stipulated that ERISA is the governing law  *See* Joint Status Report at 2, Docket No. 30.

[2]Though termed a "Defendants' Memorandum in Support of Judgment for Defendants" by Defendants, this document was filed on January 15, 2010 and discusses the merits of the case. It will be construed as an "Opening Brief" in accordance with the schedule entered for this case on July 1, 2009.  See Standard ERISA Scheduling Order, Docket No. 32.

## BACKGROUND

A.      Policy Coverage and Provisions

In September 1995, Plaintiff Clifford Pepper began  "covered employment"  within the meaning of the Plan.[3]  Plaintiff actively worked in said "covered employment" until September, 2001.[4]  Under the terms of the Plan, Plaintiff attained vested status after five years of "covered employment" and remains a "participant" under the Plan.[5]  This period of "covered employment," earned Plaintiff 6.50 years of "credited service" and 6.50 years of "credited future service" within the meaning of the Plan."[6]

Before January 1, 2003, the Plan required at least 10 years of "credited service" to be eligible for a disability pension.[7]  Amendment No. 9 (Amendment)  to the Plan, made effective January 1, 2003,  added new provisions reducing, in certain cases, the number of years required for disability pension eligibility.[8]  It is Plaintiff's eligibility under these amended provisions that is at issue in this case, specifically the time at which Plaintiff was "totally disabled" under the Plan.

Section 3.06 requires that an applicant for disability pension be retired, not yet 62 years of

---

[3]Plaintiff's Opening Brief at 2, Document No. 40. Plaintiff formerly lived in California and worked there as a crane operator and operations manager for an employer who was a signatory to the Plan. *Id.*

[4]*Id.*

[5]*Id.*

[6]*Id.*

[7]*Id.* at 2-3 (*citing* § 3.06(a)).

[8]*Id.*

age, and "totally disabled" as defined in § 3.07.[9]  Section 3.06(a) requires at least 15 years of

"credited service," or at least 10 years of "credited service," exclusive of any "credited future

service" in order for a participant to qualify for a disability pension.[10] However, one provision added

in the 2003 Amendment, § 3.06(b), allows "participants" with at least 5, but less than 10 years of

"credited service" and at least 2 quarters of "credited future service" to qualify for a *reduced*

disability pension as described by § 3.08(f) of the Plan.[11] Section 3.08(f) is the other provision from

the Amendment.[12] It provides the total amount of reduced disability pension available under §

3.06(b) and specifically limits § 3.06(b) eligibility to those "participants" who became "totally

disabled," as defined in § 3.07 of the Plan, on or after January 1, 2003.[13] The definition of "totally

disabled" in § 3.07 reads:

> A Participant will initially be deemed totally disabled within the meaning of this
> Pension Plan solely if the Participant is entitled to a Social Security Disability
> Benefit(or its equivalent) in connection with his Old-Age, Survivors Disability
> Insurance coverage (or its equivalent), even though he may not meet the employment
> requirements.[14]

Additionally the § 9.03 of policy states:

The Board of Trustees shall, subject to the requirements of the law, be the sole judge

---

[9]Defendant's Opening Brief, Attachment A, at 6, Docket No. 39-2. Plaintiff was retired and approximately 47 years of age at the time of his first application. Plaintiff's Opening Brief at 5-7, Docket No. 40. Plaintiff is now approximately 55 years of age, and there is no dispute as to Plaintiff meeting the age and retirement requirements of § 3.06.

[10]*Id.*

[11]*Id.*

[12]Plaintiff's Opening Brief at 2-3, Docket No. 40.

[13]Defendant's Opening Brief, Attachment A, at 7, Docket No. 39-2.

[14]*Id.* at 6.

3

of the standard of proof required in any case and the application and interpretation of this Plan, and decisions of the Board of Trustees shall be final and binding on all parties, subject only to such judicial review as may be in harmony with federal labor policy.[15]

B.     Administrative Adjudication of Plaintiff's Claim

The administrative record has been submitted to the Court and is Bate stamped OE3PP000001-OE3PP000359 (Bates #001-359).[16] Plaintiff submitted his first application for disability pension to the Plan in 2004 and was notified by letter dated June 7, 2004 that he did not qualify for disability because he had not accumulated at least 15 years of "credited service" as required by the Plan.[17] Plaintiff did not appeal this denial within the 60 days required by the Plan under § 9.04(c).[18]

On April 23, 2008, Plaintiff submitted a second pension application and, in an attached letter, requested that the Plan re-examine his claim for disability pension pursuant to the 2003 Amendment provisions.[19] The Plan acknowledged receipt of Plaintiff's second application, and denied it by letter dated May 21, 2008, citing Plaintiff's status remained unchanged from the 2004 determination.[20]

In an Appeal Request Form dated June 10, 2008, Plaintiff appealed the denial of his claim

[15]Defendant's Opening Brief, Attachment B, at 2, Docket No. 39-3.

[16]Docket No. 35.

[17]Bates #326-330.

[18]Defendant's Opening Brief at 2, Docket No. 39; *See* Bates #196 (contains the text of § 9.04(c)).

[19]Bates #326-29.

[20]Bates #325.

for disability pension benefits on the grounds that he was not deemed "totally disabled" by the Social Security Administration until July 2003, and he should therefore qualify under the § 3.08(f) requirement that total disability occur after January 1, 2003.[21] The Plan acknowledged receipt of Plaintiff's appeal by letter dated July 11, 2008.[22] This letter requested Plaintiff provide both a complete copy of his Social Security Disability Insurance (SSDI) award or Notice of Decision and a current letter from the Social Security Administration (SSA) stating that he was still receiving benefits.[23]

Plaintiff's complete SSA Notice of Decision and accompanying verification of continuing benefits was stamped received by the Plan on September 11, 2008.[24] The Plan then scheduled a hearing on Plaintiff's appeal before the Claims Appeal Committee citing the applicable Plan sections were § 3.06, § 3.07, and § 3.08.[25] At the hearing on October 17, 2008, Plaintiff appeared and argued that his entitlement to SSDI benefits did not occur until July 21, 2003, upon the Administrative Law Judge's Notice of Decision, and therefore his "total disability" under the plan did not occur until after the January 1, 2003 eligibility date required by § 3.08(f).[26] The Claims Appeal Committee notified Plaintiff by letter dated October 22, 2008 that he was not entitled to any additional credited

---

[21]Bates #307.

[22]Bates #308.

[23]*Id.*

[24]Bates #309-324.

[25]Bates # 304.

[26]Bates #337-59.

time and that the original denial notice of June 7, 2004 had been upheld.[27]

In a letter dated December 6, 2008, Plaintiff, through counsel, requested the Board of Trustees reopen Plaintiff's claim, contending that the Board made errors in applying the terms of the plan.[28] Counsel for the Plan, in a letter dated January 7, 2009, advised that the Board and the Plan declined to reopen Plaintiff's claim and that the matter was closed.[29] Plaintiff now claims to have exhausted his administrative remedies.[30]

C.    Procedural History

Plaintiff chose to pursue litigation by filing a Complaint against the Plan and the Board on February 3, 2009.  The Complaint sought a finding that the Plan and the Board improperly denied him benefits, a declaration from the Court that he is entitled to receive benefits under the terms of the Plan, and an order that all future disability benefits should be paid pursuant to the terms of the Plan.[31]  The case was fully briefed pursuant to an ERISA schedule.[32]

---

[27]Bates #334.

[28]Bates #226-27.

[29]Alleged by Plaintiff to be Bates #360-362.

[30]Plaintiff's Opening Brief at 8, Docket No. 40. Defendants contend that Plaintiff failed to exhaust his administrative remedies by failing to file an appeal within 60 days after the initial June 7, 2004 denial of benefits, per the Plan appeals structure. This Court notes that Defendants accepted Plaintiff's second application for benefits on May 21, 2008 and further accepted his subsequent, timely appeals without explicit reference to exhaustion. Further, Plaintiff's second claim dealt specifically with eligibility under the 2003 amendments, a matter not explicitly reviewed in the 2004 claims process. Therefore this Court finds that Plaintiff's April 23, 2008 application represented a wholly new claim. The record shows that Plaintiff exhausted his administrative remedies pursuant to this second claim. The Court rejects Defendants' claim that Plaintiff failed to exhaust administrative remedies.

[31]Plaintiff's Complaint at 5-6, Docket No. 2.

[32]*See* Docket No.'s 31, 39, 40, 41, and 42.

## DISCUSSION

A.     Standard of Review and Conflict of Interest

When an ERISA plan or policy gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, a challenge to the administrator's decision is to be reviewed under an arbitrary and capricious standard.[33] Both parties agree that The Board, as plan administrator, has full discretion to interpret Plan terms and determine benefits,[34] therefore the Court will apply the deferential arbitrary and capricious standard.

The parties disagree as to the existence of a conflict of interest.[35] The *Firestone* Court found conflict exists in a plan in which the administrator has a dual role of both evaluating and paying benefits claims.[36] The *Metlife* Court expanded the conflict landscape to include professional insurers who, by nature of their business relationship with payor employers, are necessarily conflicted to some degree.[37] The evaluator here is a Board made of employee and employer representatives, each with equal voting strength, and separate from the Plan administrators who pay claims.[38] This model

---

[33]  Firestone Tire & Life Ins. Co. v. Bruch (*Firestone*), 489 U.S. 101, 109-10, 109 S.Ct. 948, 953-54, 103 L.Ed.2d 80 (1989); Fought v. Unum Life Ins. Co. of Am., 379 F.3d 997, 1002-03 (10th Cir. 2004) (*quoting Firestone*, 489 U.S. at 115).

[34]*See* Plaintiff's Opening Brief at 8-10, Docket No. 40; Defendant's Opening Brief at 2, Docket No. 39. *See also* Bates #196 (§ 9.04(c) names Board as sole judge of application and interpretation of Plan)

[35]*See* Plaintiff's Opening Brief at 8-10, Docket No. 40; Defendant's Answer Brief at 8-9, Docket No. 41.

[36]Metropolitan Life Ins. Co. v. Glenn (*Metlife*), 554 U.S. 105, 112 128 S.Ct. 2343, 2348, 171 L.Ed.2d 299 (2008).

[37]*Id*. at 114; 2349-50

[38]*See* Defendant's Answer Brief at 2, Docket No. 41. *See also* Bates #334.

7

bears little similarity to the other conflict scenarios contemplated by the courts. In fact, the presence of employee members seems to indicate a desire on the part of the Plan to avoid possible conflicts. Further, even with his evidence from outside the administrative record, Plaintiff does not adequately support his over-arching argument that employer members tipped the balance against him in an effort to remedy the Plan's underfunded status.[39] In this case, the Court declines to apply a conflict of interest analysis.

C.      Ambiguity

        To be entitled to benefits under the Plan, Plaintiff must show he was "totally disabled" under § 3.07 of the Plan, that is "entitled to a Social Security Disability Benefit," on or after January 1, 2003. Plaintiff contends that the "entitled to a Social Security Disability Benefit" Plan language in §3.07 is unambiguous, and notes that when Plan documents, taken as a whole, are unambiguous, courts eschew deference, and construe the documents as a matter of law.[40] Defendants concede that the plain language § 3.07 is unambiguous, that Plaintiff was "entitled to a Social Security Disability Benefit" as of his October 26, 2001 SSDI application, and they similarly ask the Court to rule in their favor as a matter of law.[41] Both parties are incorrect.

        "Ambiguity exists where a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term."[42] In order to determine

---

[39]Evidence outside the Administrative Record is not properly considered and was not used in the Court's analysis. *See* Fought v. UNUM Life Ins. Co of Am., 337 F.3d 997, 1003 (10th Cir. 2004).

[40]Plaintiff's Response Brief at 8, Docket No. 42 (*citing* Miller v. Monumental Life Ins. Co., 502 F.3d 1245 1250 (10th Cir. 2007).

[41] Defendant's Answer Brief at 7-9, Docket No. 41.

[42]Admin. Comm. of Wal-Mart Assocs. Health & Welfare Plan v. Willard, 393 F.3d 1119, 1123 (10th Cir.2004)

whether plan language is ambiguous, the Court must consider the "common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean."[43] Here, the parties disagree as to *when* Plaintiff was actually "entitled to" SSDI, and therefore "totally disabled" under the plan. As a result, there is dispute as to the meaning of the words "entitled to" under the Plan. To determine if that dispute rises to an ambiguity, we must determine whether another reasonable person in Mr. Pepper's position would have believed as he did: that he was not "entitled to a Social Security Disability Benefit" under § 3.07 of the Plan until the SSA's Notice of Final Decision on July 21, 2003.

Plaintiff contends that a reasonable party would not believe he was entitled to benefits until he was entitled "to receive" them, i.e. after he ultimately received a favorable decision from the Administrative Law Judge.[44] Defendant argues this interpretation is unreasonable, pointing to the SSA's Notice of Decision which states that Plaintiff has been under a disability, as defined by the Social Security Act, beginning October 1, 2001 and "is entitled to Disability Insurance Benefits on the basis of his application of October 26, 2001."[45] Defendants also point out that Plaintiff was paid retroactive benefits in the amount of $20,000.00 back to October 1, 2001, with offsets.[46] Although, defendants' reliance on the language of the SSA's Notice of Decision and subsequent payment of retroactive benefits is entirely rational, this Court finds Plaintiff's belief that he was not "entitled to a Social Security Disability Benefit" until he received actual benefits is also rational

---

[43]*Id.*

[44]Plaintiff's Response Brief at 8, Docket No. 42.

[45] Defendant's Answer Brief at 6, Docket No. 41 (*referencing* Bates #315-16).

[46]Defendant's Opening Brief at 2, Docket No. 39 (*referencing* Bates #314, 342).

under the circumstances. As such, the Plan language "is entitled to a Social Security Disability Benefit" in § 3.07 is ambiguous because the actual date of entitlement is susceptible to more than one rational interpretation.

D.      Board's Denial of Plaintiff's Claim

        "When a plan administrator is given authority to interpret the plan language, and more than one interpretation is rational, the administrator can choose any rational alternative."[47] An administrator's interpretation must only "reside[] somewhere on the continuum of reasonableness-even if on the low end."[48] In this case, Defendant Board was the sole arbiter of the application and interpretation of the Plan.[49]  The Board's interpretation that Plaintiff was entitled to benefits on the basis of the SSA's October 1, 2001 date of disability is entirely rational and reasonable. If Plaintiff was entitled to benefits as of October 1, 2001, then he was "totally disabled" per the language of § 3.07 before January 1, 2003 and not entitled to the reduced disability pension outlined in §§ 3.06(b) and 3.08(f).  Because Plaintiff lacks at least 10 years of "credited service" exclusive of "credited future service," he is also not eligible for the standard disability pension benefits under § 3.06(a). As a result, Defendant Board's total denial of benefits based on its interpretation of Plan language was neither arbitrary nor capricious.[50]

_____

[47]Kimber v. Thiokol Corp., 196 F.3d 1092, 1100 (10th Cir.1999) (*citing* Naugle v. O'Connell, 833 F.2d 1391, 1396 (10th Cir.1987).

[48]*Id.* at 1098 (internal citations omitted).

[49]Bates #305.

[50]Although outside the Administrative Record, the Court notes that the SSA's internal standards and practices colloquially recognize both a "Date of Disability Onset," and a subsequent "Date of Entitlement" at which time claimant is entitled to benefits. This "Date of Entitlement"is five full calendar months after the "Date of Disability Onset" as determined by the SSA. *See, e.g.,* SOCIAL SECURITY ADMINISTRATION, BENEFITS PLANNING QUERY HANDBOOK, at 8,  (*cont.*)

## CONCLUSION

For the reasons cited herein, Defendant Board's denial of Plaintiff Pepper's disability pension claim is hereby AFFIRMED.  A separate Judgment is filed herewith.

IT IS SO ORDERED this 24th day of October, 2011.

James H. Payne
United States District Judge
Eastern District of Oklahoma

---

(*cont.*) (2009)  www.socialsecurity.gov/disabilityresearch/documents/BPQY_Handbook%209-16-09.doc  (distinguishing Date of Disability Onset and Date of Entitlement); SOCIAL SECURITY ADMINISTRATION, PROGRAM OPERATIONS MANUAL SYSTEM, DI 10105.070(A) (2011), http://policy.ssa.gov/poms.nsf/lnx/0410105070 (Entitlement to [Disability Insurance Benefits] begins with the first full calendar month after the waiting period in which all other requirements are met"). In this case, Plaintiff's Date of Disability Onset is clearly October 1, 2001. According to the SSA, Plaintiff's "Date of Entitlement" would be five full months after that date.